IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 4, 2018

## IN RE BRIANNA B.[1]

**Appeal from the Chancery Court for Maury County**
**No. A-041-16     Stella L. Hargrove, Chancellor**

_____

### No. M2017-02436-COA-R3-PT

_____

This action involves a termination petition filed by the father and stepmother of two minor children in an attempt to terminate the biological mother's parental rights. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to support and to visit and failure to manifest an ability and willingness to personally assume responsibility for the children. The court further found that termination was in the best interest of the children. We vacate the order of termination and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and BRANDON O. GIBSON, J., joined.

Brandon E. White, Columbia, Tennessee, for the appellant, Debra H.

L. Samuel Patterson, Columbia, Tennessee, for the appellees, Michael and Jacqualin B.

### OPINION

### I.     BACKGROUND

The Children at issue, Brianna and Elizabeth, were born of the marriage between Debra H. ("Mother") and Michael B. ("Father") in January 2001 and August 2006, respectively. Mother and Father (collectively "the Parents") later divorced, and Father was designated as the primary residential parent pursuant to an agreed parenting plan.

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Pursuant to the parenting plan, dated March 22, 2012, Mother was not required to remit child support and was awarded co-parenting time every other weekend from Thursday through Sunday.

Father married Jacqualin B. ("Stepmother") (collectively "the Petitioners") in October 2012, and the Children have resided with them since that time. The record reflects that the Parties did not adhere to the parenting plan and that Mother exercised co-parenting time on an occasional basis. Neither party filed a petition to modify the parenting plan. Instead, Petitioners filed a petition to terminate Mother's parental rights on October 21, 2016, based upon the statutory grounds of abandonment for failure to support and to visit, wanton disregard for the children's welfare, and failure to manifest an ability and willingness to assume responsibility for the Children.

Mother objected and moved for visitation with the Children. On June 26, 2017, the court granted visitation in accordance with the terms provided in the existing parenting plan, pending the final hearing on the termination petition. Petitioners then filed a motion to end Mother's visitation on August 15, alleging that visitation was not in the best interest of the Children. Petitioners claimed that Brianna refused to visit and that Mother discussed the facts of the case with Elizabeth, causing the child additional stress and anxiety. Following a hearing on August 30, the court suspended Mother's visitation based upon the living conditions at the residence and Brianna's refusal to visit. The court advised Mother to file a renewed motion once her living conditions improved.

The case proceeded to a hearing on the termination petition on October 30, 2017, and concluded on October 31. As pertinent to this appeal, Father confirmed that Mother had not remitted child support since the time of the divorce and execution of the permanent parenting plan, which did not require payment of support. He indicated that he and Stepmother had provided for the Children in Mother's stead and that he never requested child support from Mother. He described their three-bedroom, two bath house in which each child enjoyed her own bedroom and indicated that the Children were doing well at home and in school. He stated that Brianna has her own vehicle and works at a fast food restaurant when she is not in school. He confirmed his employment as a mechanic and stated that he works six days per week and is paid hourly. He provided that he and Stepmother grossed approximately $87,000 in 2016.

Father testified that he and Stepmother filed the termination petition due to Mother's inconsistent and sporadic involvement in the Children's lives. He explained that in the event of his death, he was concerned that the Children would be placed with Mother instead of Stepmother, who has served along with him as their caretaker for the past several years.

Father testified that Mother did not adhere to the residential schedule but that she periodically called or texted to request visitation. He asserted that he facilitated visits as requested by her, depending upon the Children's availability. He further claimed that there was at least one time, not within the pertinent time period, that Mother requested visitation but then did not appear, upsetting the Children. He stated that Mother visited four times for a total of five hours during the pertinent time period from June through October 2016. However, he admitted that he ended a visitation early on August 7 and refused requests for visitation on September 18 and October 2. He explained that the visit on August 7 was ended due to a conflict involving his mother,[2] that the Children had other plans on September 18 and that Mother was no longer available when the Children were available, and that they were on a family vacation on October 2. He agreed that Mother also spoke with the Children by telephone throughout the pertinent time period.

Father further acknowledged that Mother visited with Elizabeth pursuant to the residential schedule after the filing of the termination petition. He identified several text messages in which Mother requested contact or visitation with either the Children or Elizabeth since the filing of the termination petition.

Father noted that Mother engaged in overnight visitation from May through September 2015 but still did not adhere to the residential schedule. He stated that at some point in 2015,[3] Mother began working at a bar and often worked during the nighttime hours. He expressed concern regarding Mother's potential drug usage. He explained that Mother reported to him that she was using methamphetamine in 2013 and 2014 and that she lived with her fiancé, who served time for drug-related crimes, namely promotion of methamphetamine. He further stated that he had concerns regarding the cleanliness of Mother's residence.

Stepmother testified concerning her love and care for the Children and expressed her desire to adopt them, if permitted. She confirmed that Mother did not adhere to the residential schedule during the pertinent time period and never remitted child support. She stated that Mother provided very short notice when requesting visitation and that the Children often initiated the contact with her. She conceded that on occasion, Mother texted Father to ask if the Children were available and able to call her.[4]

---

[2] He believed Mother invited the paternal grandmother to Elizabeth's birthday party without his consent, prompting him to retrieve the Children because of a prior conflict with his mother.

[3] Mother confirmed that she began working at the bar in August 2015.

[4] The Children testified that Mother texted Father to initiate contact with them and that they then called Mother. However, Brianna stated that Mother only initiated contact once or twice per month.

Brianna, who was 16 years at the time of the hearing, indicated her assent to the termination of Mother's parental rights and Stepmother's adoption. She stated that she enjoyed a close relationship with Stepmother and further stated that she could not live without her. She provided that she did not enjoy a close relationship with Mother and claimed that Mother chose drugs, alcohol, parties, and bars over a relationship with her. She stated that she last visited Mother for Elizabeth's birthday in 2017. She stated that the residence was "awful" and "disgusting" and had a "putrid smell." She confirmed that she spent the night but stated that she and Elizabeth slept in her car while the others camped outside. She acknowledged that she spent more time with Mother in 2015 and even stayed overnight "about every weekend" from May through September. However, she claimed that during that time and in the years following, Mother spent much of their time together on her phone and was not welcoming to her. She attested that she no longer wanted to visit with Mother. She explained that she no longer wished to have any contact as a result of their disagreement over her desire for Stepmother's adoption of her.

Elizabeth, who was 11 years old at the time of the hearing, testified in chambers and indicated her assent to the termination of Mother's rights and Stepmother's adoption. However, Elizabeth indicated that she would still like to visit Mother every other weekend. She stated that it made her "[k]ind of sad" when she went long periods without seeing Mother prior to the filing of the termination petition.

Johnathan G., Mother's fiancé, confirmed his employment since his release on probation in March 2017. He explained that he was previously incarcerated on an effective ten-year sentence for charges relating to methamphetamine production. He confirmed that Mother used methamphetamine with him prior to his incarceration and estimated that she had used not more than 20 times while with him in 2013 and 2014. He stated that since his release, he has purchased some land and a mobile home for him and Mother's use. He confirmed that their prior residence, also a mobile home, was unsanitary due to his elderly relatives who resided there. He stated that the newer mobile home is located next to the old one, where his relatives will remain and receive periodic care from them and Hospice. He provided that he has room for the Children in the new residence and that they are welcome to stay with them.

Mother testified that she also has a son who has since attained the age of majority. She has not remitted child support, despite periods of employment. She stated that from August 2015 through June 2016, she worked at a bar from 4 p.m. to 3:30 a.m. on Friday and Saturday and then on Tuesdays from 4 p.m. until closing. She made $5 per hour in addition to tips and also supplemented her income by cleaning houses. She then worked at a different bar from August through October 2016. She was unemployed for a few months until she attained seasonal work during the holidays at Dollar General and made $7.25 per hour. She confirmed that her adjusted gross income for 2015 was $15,785 and

for 2016 was $895. She then worked at a restaurant from January through April 2017 and made approximately $8.75 per hour until she quit working to provide full-time care for Johnathan's mother and grandfather. She asserted that she has provided full-time care for them since May 2017.

Mother testified that she provided items and money for the Children when she saw them. She also provided meals, clothing, and school supplies on occasion. She acknowledged that she did not have receipts to support her claims and that the Petitioners did not let the Children keep items from her at their residence. She attested that she was willing to return to work to support the Children, if necessary.

Mother testified that she has used methamphetamine and smoked marijuana. She denied suffering from a drug addiction and stated that she has not used methamphetamine since 2015. She confirmed that she used methamphetamine with Johnathan in 2014[5] and 2015 but did not believe she had used on 20 different occasions. She provided that she could currently pass a drug test but stated that she last used marijuana in May 2017. She admitted a misdemeanor theft conviction in 2014, for which she served 11 months and 29 days on probation with no violations. She acknowledged that her prior residence had some problems due to the health issues of Johnathan's relatives. She provided that she has since moved into a nicer residence that she is able to maintain and keep sanitary.

Relative to visitation, Mother confirmed that she was unable to exercise overnight visitation from August 2015 through June 2016 and from August 2016 through October 2016 as a result of her employment that required her to work on the weekends. However, she claimed that she spent time with the Children during the day and then returned them to Father before her shift. She denied Brianna's claim that she spent the majority of her time on her telephone while visiting. She conceded that she did not visit in June, July, and October 2016 and only had one visit in August and three visits in September.

Mother claimed that Father interrupted her visitation on August 7, 2016, because he believed his mother was invited to attend Elizabeth's party. She denied inviting his mother and stated that the Children were only there for approximately 45 minutes before they left with Father. She was denied visitation on September 18 because the Children had other plans. She explained that she planned to take the Children to a baby shower but that the shower was over by the time Brianna left work. She was also denied visitation in October due to Father's vacation plans.

Mother alleged that she maintained contact with the Children by telephone. She testified that she contacted the Children through Father or Stepmother and asked them to

---

[5] She conceded that she failed to list her drug usage in 2014 in her answer to interrogatories.

call her. She explained that she did not want to interrupt them by calling but that she would send a text to request further contact at their convenience. She identified call logs, documenting her telephone contact with the Children during the pertinent time period. She further provided that she maintained contact with the Children following the filing of the termination petition. She also engaged in overnight visitation with Elizabeth after she procured a court order. She invited Brianna, who only came once, while Elizabeth came every other weekend. She believed her relationship with Brianna could be repaired.

Following the hearing, the trial court granted the termination petition, sustaining each ground but abandonment based upon wanton disregard and finding that termination was in the best interest of the Children. The court specifically found that Mother was not a credible witness. This timely appeal followed.

## II.     ISSUES

We consolidate and restate the issues on appeal as follows:

A.     Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B.     Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C.     Whether clear and convincing evidence supports the court's termination based upon a finding that Mother failed to assume custody or financial responsibility pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

D.     Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a

parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.    DISCUSSION

### A. & B.

In terminating Mother's parental rights based upon the statutory ground of abandonment for failure to visit and to remit support, the court considered the four months preceding October 21, 2016, the filing date of the termination petition. The relevant time period was June 21, 2016, through October 20, 2016.[6]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D).[7] Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). A

---

[6] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

[7] The legislature has since amended Section 36-1-102(1)(A), effective July 1, 2018, to place the burden upon the parent to establish his or her lack of willfulness as an affirmative defense to the statutory ground of abandonment. The amendment does not apply to this case, filed in October 2016.

parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

1.

Mother claims that her failure to visit was not willful and that several attempts to visit during the pertinent time period were denied. The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted) (upholding termination when the father did not take court action to secure visitation like the parents in *In re A.M.H.*).

The record reflects that Mother visited four times during the pertinent time period, once in August and three times in September, for a total visitation time of five hours from June through October 2016. In sustaining this ground of termination, the court found the record "devoid of any interference with [Mother's] token attempts to see [the Children]." However, the record reflects, and Father does not deny, that visitation was interrupted on August 7 and that two additional requests for visitation were denied in September and October 2016, before the expiration of the pertinent time period. While we acknowledge that Father's vacation was in accordance with the residential schedule in October, we believe Mother's attempt to visit should still be considered in assessing the willfulness of her failure to visit. Further, we must note that the Parties never adhered to the residential schedule and that the Petitioner's permitted visitation, when possible, with minimal notice from the time of the divorce in 2012. The Petitioners cannot now claim the

inconvenience of Mother's lack of notice when attempting to terminate her parental rights based upon abandonment for failure to visit. Accordingly, we vacate the court's finding of abandonment for failure to visit and remand for consideration of Mother's willfulness in light of Father's denial of visitation and the Parties' course of dealing in scheduling visitation since the time of the divorce.

2.

The record reflects that Mother failed to remit child support during the requisite time period. Mother claims that her failure to do so was not willful when she was never ordered to pay child support and when she and Father specifically agreed that she was not required to remit support pursuant to the parenting plan. "A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support." *In re Jacob M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013) (citation omitted). Furthermore, "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H). However, "parental rights may not be terminated based on abandonment for failure to support unless clear and convincing evidence shows that the parent's failure to make reasonable payments toward the support of his child was willful." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004).

"'Failure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Here, the court acknowledged that the parenting plan did not require Mother to remit child support but did not issue any findings of fact concerning Mother's willfulness in relation to the terms contained in the parenting plan. Accordingly, we vacate the court's finding of abandonment for failure to support and remand for consideration of Mother's willfulness in light of the terms contained in the parenting plan.

C.

A parent's parental rights may be terminated when the parent "has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child *and* placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14) (emphasis added). Here, the court found that the record established that Mother "never wanted custody" of the Children and that her lifestyle left "no room" for raising children. While

the court's assessment of Mother's character may be correct, the court failed to consider the fact that Father was designated as the primary residential parent in the parenting plan and that Mother was specifically exempted from remitting support pursuant to their agreement. Further, the court failed to issue any findings of fact or conclusions of law concerning whether placing the Children in Mother's care would pose a risk of substantial harm to their physical or psychological welfare. Accordingly, we vacate the court's finding on this ground and remand for additional findings of fact and conclusions of law for this ground of termination.

D.

Although we are not required to conduct a best interest analysis when no ground for termination has been proved, in the event of further appellate review, we have decided to consider whether termination was in the best interest of the Children. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)    In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[8]
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

---

[8] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

This case offers a unique situation in light of the agreed upon parenting plan and the Children's ages at the time of the hearing. While Mother's involvement with the Children was sporadic and inconsistent with the terms of the parenting plan, Elizabeth evidenced a bond with her mother and a desire to maintain that relationship. Brianna understandably did not evidence such a bond and indicated her desire to end the relationship. However, Brianna will attain the age of majority in January 2019, likely before the trial court's ruling upon remand is even final. Mother has also taken steps to improve her life and make room for the Children and evidenced her improvement by maintaining regular visitation with Elizabeth when permitted by the court. With all of the above considerations in mind, we also vacate the court's best interest finding and remand

for additional findings of fact and conclusions of law on this issue in light of the Children's respective ages and varying levels of attachment to Mother.

## V. CONCLUSION

The judgment of the trial court is vacated, and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellees, Michael and Jacqualin B.

_____
JOHN W. McCLARTY, JUDGE